AO 91 (Rev. 11/11) Criminal Complaint (Rev. by USAO on 3/12/20)    ☐ Original   ☐ Duplicate Original

**LODGED**
CLERK, U.S. DISTRICT COURT
7/27/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___DTA___ DEPUTY

# UNITED STATES DISTRICT COURT
for the
Central District of California

**FILED**
CLERK, U.S. DISTRICT COURT
7/27/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___KH___ DEPUTY

United States of America

v.

Efrain Ceballos Sanchez,

Defendant(s)

Case No. 8:22-mj-00516-DUTY

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of July 26, 2022 in the county of Orange in the Central District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841(a)(1) | Possession with Intent to Distribute Methamphetamine |

This criminal complaint is based on these facts:

*Please see attached affidavit.*

☒ Continued on the attached sheet.

/s/ Dwight Llewellyn
Complainant's signature

Dwight Llewellyn, Special Agent (HSI)
Printed name and title

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by telephone.

Date: July 27, 2022

/s/ Autumn D. Spaeth
Judge's signature

City and state: Santa Ana, California

Hon. Autumn D. Spaeth, U.S. Magistrate Judge
Printed name and title

JW:hc

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Dwight Llewellyn, being duly sworn, declare and state as follows:

**INTRODUCTION**

1. I am a Special Agent ("SA") with the United States Department of Homeland Security, Immigration & Customs Enforcement, Homeland Security Investigations ("HSI"), and have been so employed since January 2010. I am currently assigned to the HSI Orange County Gang and Narcotics Investigative Group and have been assigned there since, July 2018. My primary responsibilities are investigating violations of federal law involving importation and exportation crimes, gang-related crimes, and the distribution of and possession with intent to distribute drugs, in violation of Title 21 of the United States Code.

2. In the course of my duties with HSI, I have executed and participated in numerous search warrants to seize evidence of violations of federal and state laws, as well as arrest warrants to apprehend individuals who have committed such violations. I have completed the Criminal Investigator Training Program and HSI Special Agent Training at the Federal Law Enforcement Center in Glynco, Georgia where I received specialized training pertaining to drug trafficking, and electronic and physical surveillance procedures as well as the preparation and execution of search and arrest warrants. Prior to joining HSI, I was a Uniformed Police Officer with the United

1

States Secret Service ("USSS").  I have over 14 years of law enforcement experience.

## PURPOSE OF AFFIDAVIT

3.  This affidavit is made in support of a criminal complaint for **EFRAIN CEBALLOS SANCHEZ** ("SANCHEZ") for a violation of Title 21, United States Code, Section 841(a)(1) (Possession with Intent to Distribute Methamphetamine).

4.  This affidavit is intended simply to set forth facts sufficient to establish that there is probable cause for the requested complaint.  It does not, therefore, purport to set forth all of my knowledge of, or the investigation into, this matter.

5.  Unless otherwise stated, the facts set forth in this affidavit are based upon my personal observations; my training and experience; oral and written reports about this investigation; and physical surveillance conducted by federal agents or local law enforcement agencies, which has been reported to me either directly or indirectly.  Unless otherwise noted, when I assert that a statement was made, I have either heard the statement directly or the statement was reported to me by another law enforcement officer, either directly or in a written report.  Unless specifically indicated otherwise, all conversation and statements described in this affidavit are related in substance and in part only.

**STATEMENT OF PROBABLE CAUSE**

6. Based on my review of law enforcement reports, conversations with other law enforcement officers, and my own knowledge of the investigation, I am aware of the following:

    a. In July of 2022, I received information from a Confidential Informant ("CI")[1] regarding a Mexican Drug-Trafficking Organization that was interested in selling 50 pounds of methamphetamine and would transport the methamphetamine from Mexico to Orange County, California. The CI contacted this organization to purchase 50 pounds of methamphetamine and was provided the phone number of the individual transporting the drugs (later identified to be SANCHEZ). The CI then contacted HSI Orange County, which utilized an undercover Costa Mesa Police Officer ("UC") to act as an employee of the CI to coordinate the narcotics transaction with SANCHEZ. All conversations between the CI, UC, and SANCHEZ were in Spanish.

    b. On July 26, 2022, during a telephone call, the CI told SANCHEZ to bring the 50 pounds of methamphetamine to a Home Depot parking lot located at 3400 W. MacArthur Boulevard, Santa Ana, California. SANCHEZ told the CI that he would call when he was 40 minutes from the meet location. Meanwhile, law enforcement set up surveillance units at the Home Depot parking lot.

    c. The CI received a call from SANCHEZ that he was ten minutes away from the Home Depot. SANCHEZ then called the CI

---

[1] The CI is an established source. The CI receives monetary compensation for his/her work. To my knowledge, the CI has no prior criminal convictions (apart from potential traffic infractions). The CI is a fluent Spanish speaker.

when he arrived at the Home Depot. The CS used a three-way call with the UC and SANCHEZ so that the UC could speak directly to SANCHEZ. The UC told SANCHEZ where he was parked at the Home Depot parking lot. SANCHEZ told the UC that he was in a Ford truck. During this time, law enforcement surveillance units noticed a Ford truck driving slowly around the Home Depot parking lot. The Ford truck stopped next to the UC's vehicle and parked.

      d.   The UC stated that the truck was occupied by two Hispanic males. The UC walked up to the passenger side window of the Ford truck and spoke with the driver in Spanish. The UC asked if they were here for the "chairs," which was the agreed upon code question to ask to ensure the individuals were there for the narcotics transaction. SANCHEZ, who was the driver, agreed and stated he was there to make the exchange.

      e.   The UC told SANCHEZ that he had the money to purchase the drugs at a nearby garage. The UC asked to see the drugs to ensure the drugs that he was buying were good. SANCHEZ stated that he would show the UC the drugs at the garage. The UC stated that SANCHEZ motioned to the back seat of the car when saying that the drugs were good. The UC asked SANCHEZ to follow him to the garage. The UC then walked back into his vehicle and gave the signal for law enforcement units to come into the area.

      f.   The occupants of the car were detained at that time. A Costa Mesa drug-detection K9 was brought to the location and alerted on the Ford truck. Further search of the vehicle revealed approximately 45 pounds of methamphetamine in two boxes and one bag located in the back seat of the Ford truck. The

4

search of the vehicle also revealed that SANCHEZ destroyed his cellphone by twisting it in half.  SANCHEZ was taken into custody.

    7.    Later that night, I interviewed SANCHEZ at the Costa Mesa Police Department station.  SANCHEZ was read his Miranda rights in the Spanish language by Costa Mesa Police Officer Jaime Santibanez ("CMPD Santibanez").  SANCHEZ waived his right to counsel and agreed to answer my questions, which were translated from English to Spanish by CMPD Santibanez.  The interview was recorded.  From the interview, I learned the following:

    a.    SANCHEZ had been arrested in the past for possession with intent to distribute methamphetamine.  SANCHEZ picks up drugs and exchanges drugs for money approximately 2-3 times a month.  SANCHEZ was to be paid $2,000 for this delivery.

    b.    SANCHEZ was contacted via telephone by an unknown member of a drug organization and directed where to pick up drugs and where to deliver them.  SANCHEZ takes out his fee from the narcotics money he receives.  SANCHEZ is then contacted by telephone and told where to deliver the money.

    c.    If SANCHEZ had not destroyed his phone, he would be able get the address of where he was to deliver the money from the above-described narcotics transaction.

5

8. I conducted a presumptive test of one of the packages of the suspected methamphetamine. According to the test results, the substance contained methamphetamine. Agents weighed the suspected packages containing the crystal methamphetamine, and, together, they weighed a total of approximately 45 pounds.

9. SANCHEZ is a citizen of Mexico and is in this country illegally. I advised him of his right to communicate with the consular or diplomatic officers from his country.

## CONCLUSION

10. Based on the foregoing, I believe probable cause exists to believe that **EFRAIN CEBALLOS SANCHEZ** has committed a violation of Title 21, United States Code, Section 841(a)(1): Possession with Intent to Distribute Methamphetamine.

/s/
Dwight Llewellyn,
Special Agent
Homeland Security
Investigations

Attested to by the applicant
via telephone in accordance
with the requirements of Fed.
R. Crim. P. 4.1 on this day,
July  27 , 2022.

    /s/ Autumn D. Spaeth
    AUTUMN D. SPAETH
UNITED STATES MAGISTRATE JUDGE